UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES SQUICCIARINI,

       Plaintiff,

-against-

THE VILLAGE OF AMITYVILLE, FIRE
CHIEF JEFFREY ERATH, FIRST ASSISTANT
CHIEF LELAND GREEY, SECOND ASSSITANT
CHIEF DAVID HEGARTY, THIRD ASSISTANT
CHIEF GAVIN BUDDE, WARDEN JAMES
JULIANO, WARDEN RONALD SMITH, WARDEN
ANTHONY SOARES, WARDEN WILLIAM REIN,
and SECRETARY ROGER SMITH,

       Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

17-CV-6768 (DRH)

**APPEARANCES:**

**For Plaintiff:**
The Law Office of Anthony M. Grandinette
114 Old country Road, Suite 420
Mineola, New Yok 11501
By: Mirel Fisch, Esq.

**For Defendant:**
Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, New York 11514
By: Steven C. Stern, Esq.
   Chelsea Weisbord, Esq.


**HURLEY, Senior District Judge:**

   Plaintiff James Squicciarini ("Plaintiff" or "Squicciarini") commenced this action against

Defendants The Village of Amityville ("Village"), Fire Chief Jeffrey Erath ("Erath"), First

Assistant Chief Leland Greey ("Greey"), Second Assistant Chief David Hegarty ("Hegarty"),

Third Assistant Chief Gavin Budde ("Budde"), Warden James Juliano ("Juliano"), Warden

Ronald Smith ("Smith"), Warden Anthony Soares ("Soares"), Warden William Rein ("Rein"), and Secretary Roger Smith ("Smith") (collectively "FD Defendants") (the Village and FD Defendants are collectively referred to as "Defendants") asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of his First Amendment and Fourteenth Amendment rights, together with various state law claims.[1] Presently before the Court is Defendants' motion to dismiss, made pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. For the reasons set forth above, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint ("Compl.").

Plaintiff has been a volunteer firefighter with the Amityville Fire Department since June 1993. Shortly after his second child was born in February 2017, he had professional photographs of his family taken. In those photographs, Plaintiff is dressed in his fire department bunker gear holding his newborn child who was dressed in in a knitted makeshift bunker gear outfit. Prior to having the pictures taken, Plaintiff received permission to take the photo while dressed in his Fire Department bunker gear from Budde. On March 7, 2017, Plaintiff posted one of those photographs on his Facebook page. No one from the Fire Department complained about the fact that he posted the photograph. (Comp. ¶¶ 24-29.)

The Village of Amityville general elections, including the election for mayor were held on March 21, 2017. The candidates for mayor were Dennis Siry ("Siry") and Nick Lalota ("Lalota") and the mayoral election was "highly publicized and hotly contested." (Compl. ¶ 30-32.) The governing body of the Amityville fire department, "including all Four Chiefs and the

---

[1] Subsequent to the filing of the complaint, Plaintiff withdrew his state law claims pursuant to New York Civil Right Law 50-a and New York Public Officers Law §96, as well as his state law claims for alleged violation of his free speech and due process. (*See* DE 8 at 1, n.1; DE 19 at 1 n.1.) As a result the only state law claims remaining are for defamation and respondeat superior/vicarious liability.

Fire Council Members" supported Siry. "The Fire Chiefs attended Siry's fundraisers, as well as his ultimate victory party, [each] while dressed in their Fire Department attire which indicates 'Amityville Fire Department Chief.' They arrived at the fundraisers and victory party in official Fire Department vehicles which they parked outside the event locations." (*Id.* ¶¶ 32-36.) Plaintiff, however, supported Lalota for mayor. He spoke to residents in support of Lalota, posted sign on his property signifying that support, and "engaged in conversation regarding the election on social media, including Facebook, by posting and commenting regarding [it]." (Compl. ¶ 37.) Members of the Fire Department "expressed their dislike" of Plaintiff for his support of Lalota. The only specific example of that "disdain" alleged is that Greey, Hegarty, and Ex-Chief Waegerle were overheard stating (in an open office of the firehouse) that they wished they could have attacked Plaintiff online the way an Amityville resident had attacked Plaintiff (in a Facebook post) for supporting Lalota. (*Id.* ¶ 38.)

On Election Day, March 21, 2017, Plaintiff captioned his Facebook profile picture, the photograph of him wearing his Amityville Bunker Gear holding his new baby with the following; "**WE ARE VOTING NICK LALOTA FOR MAYOR.**" He then reposted the photograph to his Facebook wall along with the following endorsement for two other members on Lalota's ticket; "Vote for the team that has the education, experience, and proven track record, vote for the most qualified candidates, Nick, Jim and Jessica. Keep the Village moving forward." (Compl. ¶ 39 (emphasis in original).)

Approximately one hour after posting the photograph, Plaintiff received an "order", via text, from a Captain McVeety stating "As per chiefs and village attorney please remove immediately the post on Facebook of you you [sic] in your Amityville bunker gear endorsing a political candidate." (Compl. ¶ 43.) Plaintiff immediately removed the photograph. (*Id.* ¶ 44.)

"At 8:56 PM later that day," Captain McVeety notified Plaintiff that "[a]s per chiefs and fire counsil [sic]" he was suspended for thirty days due violating the "social media policy" by posting the photograph referenced above and that he would receive "a certified letter stating your right witch [sic] I know you know them." (*Id.* ¶¶ 46-48 (second set of brackets in original).) Each of the FD Defendants, "high-ranking officials within the Fire Department who are ultimate decision-makers as to matters of Fire Department membership discipline, including suspension" voted to suspend Plaintiff. (*Id*. ¶¶ 56-57.) Captain McVeety confirmed that written charges were not presented at the meeting when the Fire Council voted to suspend Plaintiff. Section 209-l of New York's General Municipal Law provides that "volunteer members of fire departments may be suspended 'after charges are filed and pending disposition of the charges.'" (*Id* ¶¶49-50, 71.) "Article IX of the Fire Department's bylaws provides that '[i]n the event that written charges are brought against any officer of member of this Department, the procedure shall be in accordance with New York General Municipal Law ¶209-l, NY Code – Section 209-L, or any other applicable statutes.'" (*Id.* ¶ 82.) The Fire Department's Standard Operating Procedures "provide that a member may be placed on 'restrictive duty' while being investigated."[2] (*Id*. ¶ 83.)

Section 10.24 of the Fire Department's Standard Operating Procedures entitled "Social Medial Policy" states the following, in its entirety:

1.   Photos taken of any Amityville Fire Department scene shall be limited to the approved members of the press, Public Information Officers and Training Committee of the Amityville Fire Department.
2.   No member of the department should take pictures or use a picture of a scene without the expressed permission of the Chief's Office.
3.   No patient images shall be used by the department for any reason unless the said person gives permission or face is blocked out.

---

[2] Standard Operating Procedure 10.4(24) provides in full: "A member can be placed on restrictive duty by the Chief's Office for actions deemed inappropriate to the good of the department while being investigated. This must be reported and approved by council at the next regular meeting. This will restrict members to base station and non-public in house duties." Weisbord Declar. Ex.B (DE 17-2) at p. 6

4.  The use of Helmet Mounted Cameras and dissemination of all images produced from the use of Helmet Mounted Cameras will be at the approval of the Chief. The use of individually purchased Helmet Mounted Cameras is strictly forbidden.

5.  Members shall not make public comments criticizing the Department or other members of the Department regarding matters relating to the Department or the performance of their firematic duties via social media. (This is repeated from duties of a member Sec 10.3.19)

6.  Photos of members in uniform, on apparatus or in any department setting that are used in any type of media should be done in a way that promotes a positive image of the Amityville Fire Department. (No alcohol containers, embarrassing situations, derogatory signs or posters may be in pictures.)

(Compl. ¶ 51.)

While suspended, Plaintiff" was prohibited from being on fire department property, as well as responding to alarms (which "prevented him accumulating points toward LOSAP benefits."[3])

Beginning March 23, 2017, Plaintiff commenced a dialogue with the Village Attorney regarding the propriety of his suspension. (Compl. ¶¶ 66-70, 77-80.) By Friday morning March 24, Plaintiff still had not received a letter explaining his rights or the basis of his suspension. On March 25, 2017 at 1:42 PM, the secretary for the fire department emailed Plaintiff the following: "At this time your suspension has been rescinded and you can respond to alarms, participate in Company activities and be on Department properties. The Fire Council had suspended you not in accordance with NY State G[en'l] M[un.] Law 209-L." (*Id.* ¶¶74, 84-85.)

Thereafter, the "Fire Department" "disseminated the nature of the false charges" against Plaintiff (i.e., that he had violated the social media policy) by disseminating copies of the March 21, 2017 minutes of the Fire Council which references his suspension and the reason therefore. (Compl. ¶¶ 88-92.) Moreover, Plaintiff was disciplined for allegedly violating the Social Media

---

[3] The complaint does not describe what "LOSAP" benefits are. Apparently "LOSAP: refers to length of service award program.

Policy while other members who violated it by posting pictures wearing fire department uniforms holding alcoholic beverages were not. (Id. 93-95.) Nor did the Fire Department take disciplinary action against department members who publicly supported Siry for Mayor "or attended other political events while dressed in [a] Fire Department uniform, such as Erath who drove a Fire Department vehicle while dressed in his department uniform to a political event at town hall." (*Id.* at ¶ 96.)

Based on the foregoing, Plaintiff asserts that Defendant violated his First Amendment Right to Free Speech/Political Expression, retaliated against him for exercising his First Amendment Rights to free speech and political expression, "discriminated against [him] based upon the viewpoint of his political expression in violation of [his] right to free speech and political expression and violated his due process rights under the Fourteenth Amendment by not complying with the requirements of N.Y. Gen'l Mun. L §209-l and not following the Department's Standard Operating Procedures." He further claims that the Fire Department's social media policy is unconstitutionally overbroad, that the Village was on notice of that fact and accordingly is liable for the violations of his First Amendment Rights. (Comp. ¶¶ 102-136.)

## DISCUSSION

## I.      Standard of Review: Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F.*

*v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.' " *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

## II. Consideration of Materials Outside the Complaint

Preliminarily, the Court must determine what materials "outside" the Complaint it may properly consider on this motion.

Defendants have submitted the following "outside" materials arguing they can be considered on their motion to dismiss pursuant to Rule 12(b)(6):

1. The Amityville Fire Department's Standard Operating Procedures;

2. The Amityville Fire Department's By-Laws;

3. The minutes from the Fire Council's meeting held on March 21, 2017;

4. Article 1, Chapter 24 of the Village of Amityville Code

5. The minutes of the Village of Amityville Board of Trustees meeting held on August 24, 2017;

6. The minutes of the Village of Amityville Planning Board meeting held on September 7, 2017;

7. The minutes of the Village of Amityville Planning Board meeting held on November 2, 2017; and

8. The minutes of the Village of Amityville Planning Board meeting held on December 7, 2017.

The materials in numbered paragraphs 5 through 8 above need not be discussed as they were submitted in support of the argument that there can be no due process claim vis a vis Plaintiff's term as chairperson of the Planning Board being terminated, a claim which Plaintiff has disavowed.[4] Also, there is no dispute that item number 4, the Amityville Village Code, and

---

[4] In support of their motion to dismiss, Defendants argue that to the extent Plaintiff is asserting a due process claim based on the him being removed as chairperson of the Amityville Planning Board, Plaintiff has no property interest in the position of chairperson and therefore any such claim must fail. In his opposition, Plaintiff states that no such claim exists. (*See* Pl.'s Mem. at 3 n. 4.)

item number 3, the March 21, 2017 Fire Council minutes, may be considered, the former as a public record and the latter having been quoted in the Complaint. Finally, the Court sees no need to consider any provisions of the By-Laws, item number 2, obviating the need to address them. Thus, the only item to be addressed is the Fire Department's Standard Operating Procedures, item number 1.

In his complaint, Plaintiff cites certain provisions of the Standard Operating Procedures. Defendants maintain that the entirety of these documents may be considered given portions of them were referenced in the complaint and because they are public documents. Plaintiff asserts that only the portion he cites should be considered, not the entirety of the documents and that they are not public records.

Consideration of the entirety of the Standard Operating Procedures is appropriate as integral to the complaint. As set forth above, consideration of a document as integral "generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted).

According the complaint, Plaintiff was notified that he was being suspended for violating the Department's "social media policy," which he identifies only as section 10.24 of the Department's Standard Operating procedures and asserts that the only possible relevant subsection is "6." However, another section of the Department's SOP provides that "members should not identify themselves as part of the Department in any statements or photographs on the

internet or social networking sites without the prior consent of the Chief's Office." SOP 10.4(6) (DE17-2 at p. 13). Although not labeled as such, the latter certainly falls under the rubric of a "social media policy."

In these circumstance, consideration of the entirety of the Standard Operating Procedures is appropriate.[5]

## III. The Due Process Claim

### A. Position of the Parties

Defendants maintain they are entitled to dismissal of Plaintiff's due process claim because his 3 1/2 day suspension was *de minimis*. (Defs.' Mem. at 10-13.) In response, Plaintiff first points out that he was suspended for thirty days and it was only because he "is a Senior Assistant County Attorney with the Suffolk County Attorney's Office" and "addressed the unlawfulness of his suspension" with the Village Attorney and Captain McVeety that the suspension was rescinded. (Pl.'s Opp. Mem. at 7.) He also disputes that the suspension in this case was *de minimis* and not actionable and that it lasted only three and a half days.

### B. The Due Process Claim is Dismissed

The Fourteenth Amendment provides: "No state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amd. XIV. "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)); *see J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)

---

[5] Having found that the Standard Operating Procedures are integral to the complaint, the Court need not address whether they are public documents except to state that Plaintiff's assertion that they are not public documents because they are not available online and a search of the Village's website yields no results for "Operating Procedures" is not convincing. Whether a document is public is not dependent on its availability on the internet.

(To plead a violation of procedural due process "a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process.") (internal quotation marks omitted). Ordinarily, due process "requires that a state or local government afford persons 'some kind of hearing' prior to depriving them of a significant liberty or property interest." *Locurto v. Safir,* 264 F.3d 154, 171 (2d Cir. 2001) However, *de minimis* deprivations are not actionable. *See Goss v, Lopez*, 419 U.S. 565, 576 (1975)

Here Plaintiff's due process claim is premised on the failure to comply with General Municipal Law 209-1 prior to his suspension. The Court notes, however, that "the hearing guarantee contemplated by ¶ 209-l(3) does not apply when charges are brought pursuant to a fire company's by-laws." *Ratajack v. Brewster Fire Dept. Inc.,* 178 F. Supp. 3d 118, 141-42 (S.D.N.Y. 2016) (citing *Armstrong v. Centerville Fire Co*., 83 N.Y.2d 937 (1994) ) (observing that the "[p]etitioner was not statutorily entitled to a hearing before being expelled for having violated respondent's bylaws" and that "[t]he controlling statute (General Municipal Law § 209–l) only grants volunteer officers and volunteer members of fire departments the right to a hearing (upon written notice of charges) before being removed on the ground of incompetence or misconduct"); *Pawlowski v. Big Tree Volunteer Firemen's Co.,* 12 A.D.3d 1030, 784 N.Y.S.2d 785, 786 (2004) ("Where . . . charges brought against volunteer firefighters concern a violation of the bylaws or constitution of the fire company, the firefighters are not entitled to a hearing."); *Ferrara v. Magee Volunteer Fire Dep't, Inc*., 191 A.D.2d 967, 594 N.Y.S.2d 506, 507 (1993) ("[The] [p]etitioner was charged with a violation of the by-laws of the [d]epartment; therefore, General Municipal Law § 209–l does not apply."). General Municipal Law § 209–l authorizes fire departments to make regulations governing removal of volunteer officers and volunteer

members of fire departments and member companies. However, it only grants the right to a hearing upon written notice of charges before being removed on the ground of incompetence or misconduct. *See Matter of Armstrong v. Centerville Fire Co*., 83 N.Y.2d 937 (1994). The legislature did not intend to interfere with the discipline in connection with the internal affairs of a fire department. *Id*.; *see Leahy v. Jordan,* 207 A.D.2d 385 (2nd Dept.1994) (A hearing was not necessary and General Municipal Law § 209–l does not apply for the discipline imposed by the Fire Department.). Here, plaintiff was charged with violating the Department's rules and therefor was not entitled to the protections of N.Y. Gen'l Obl. Law 209-l. But even if he was entitled to those protections, he has not alleged a plausible due process claim.

First, the deprivation here was *de minimis*. During his suspension, Plaintiff was precluded from responding to alarms and being on fire department property and the suspension lasted less than 96 hours. Plaintiff identifies only one alarm having been received during the period of his suspension. His status as a volunteer of the Fire Department and any property interest therein remained undisturbed and as a volunteer he was not drawing a salary that was impacted by the suspension. *Cf. MacFall v. City of Rochester*, 495 F. App'x 158, 160 (2d Cir. 2010) ("[A]n employee who is on leave and receiving his normal salary is not deprived of a property right merely by virtue of being relieved of his job duties."( (internal quotation marks omitted); *MacIneirghe v. Bd. Of Educ. of E. Islip Union Free Sch. Dist*, 2007 WL 2445152, at *19 (E.D.N.Y. Aug. 22, 2007) (in-school suspension of one day was a de minimis deprivation of a student's property right); *see generally Jones v. Bay Shore Union Free Sc. Dist.*, 666 F. App'x 92 (2d Cir. 2016) (any interest employee might have in attending school board meeting without providing advances notice was de minimis and insufficient to sustain due process claim); *Walker v. Mahoney*, 915 F. Supp. 548, 555 (E.D.N.Y. 1996) (holding that the abridgement of the

inmate's substantive due process right of access to courts resulting from his segregated confinement for a period of 23 days was de minimis); *Jones v. Smith*, 784 F.2d 149, 152 (2d Cir. 1986) (affirming dismissal of right-of-access claim in light of 30-day period of solitary confinement, which the court regarded as de minimis).

Plaintiff's argument that the deprivation was not de minimis because the suspension was supposed to last 30 days is unpersuasive. Section 1983 is not a vehicle for the assertion of deprivations that never actually happen.[6] Moreover, if as Plaintiff claims, the suspension was in violation of General Municipal Law § 209–l, Article 78 provides a wholly adequate post deprivation hearing for purposes of due process. *DeStefano v. Inc. Vill. of Mineola*, 2018 WL 4100495, *9 (E.D.N.Y. Aug. 28, 2018) (citing cases).

It is well established that the violation of state law does not in itself violate the Constitution because "federal constitutional standards rather than state law define the requirements of due process." *Holland v. City of New York*, 197 F. Supp. 3d 529, 529 (S.D.N.Y. 2016) (internal quotation marks omitted). Thus, it is appropriate to examine the process that was provided in determining whether Plaintiff has stated a due process claim. Here, the process provided to Plaintiff, albeit informal, satisfies due process given the nature of the deprivation. Plaintiff was informed of the basis for his suspension and he was able to present his point of view regarding the suspension to the Village Attorney, resulting, according to the complaint, in the suspension being rescinded in under 96 hours.

The motion to dismiss the due process claim, i.e. the fifth cause of action, is granted.

---

[6] The Court notes parenthetically that had the suspension decision not been revoked, the department may well have held a hearing. (*See* Compl. ¶ 61 (stating that Captain McVeety texted Plaintiff that he had a right to a hearing).)

**IV.    The First Amendment Claims**

**A.        The Retaliation Claim**

A plaintiff that claims retaliation in violation of the First Amendment, must plausibly allege that "(1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3)  there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers, New* York, 890 F.3d 386, 394 (2d Cir. 2018) (brackets and internal quotation marks omitted).; *see Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003).

"[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140, (1983) (citation omitted). "A court conducts a two-step inquiry to determine whether a public employee's speech is protected: The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks omitted). "This step one inquiry in turn encompasses two separate subquestions: (1) whether the subject of the employee's speech was a matter of public concern[;] and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Id*. (internal quotation mark and citation omitted). "Speech on 'any matter of political, social, or other concern to the community by a public employee may be protected by the First Amendment.' In deciding if speech addresses a matter of public concern, we consider 'whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.'" *Kiernan v. Town of Southampton*, 734 F. App'x 37, 40–41 (2d Cir. 2018) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983) and *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013)). If the answer to the question of whether the employee spoke as a citizen on a matter of

public concern is no, the employee has no First Amendment cause of action based on his or her employee's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). ). "If . . . both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry, commonly referred to as the *Pickering* analysis: whether the relevant government entity 'had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer.' " *Matthews,* 779 F.3d at 172.

Defendants' motion is premised on the *Pickering* analysis. They do not address whether Plaintiff spoke as a citizen on a matter of public concern, apparently conceding such, at least for purposes of the instant motion. Thus, like the parties, the Court shall limit its discussion to the *Pickering* test.

Defendants' argument focuses on two aspects of Plaintiff's Facebook posting: (1) that the picture was of Plaintiff wearing his Amityville Bunker Gear and (2) the caption of that picture, i.e., **"WE ARE VOTING NICK LALOTA FOR MAYOR."**[7] It is Defendant's position that taken together, a reasonable person might draw the conclusion that the Amityville Fire Department was endorsing a particular candidate and that this potential misinformation justified Defendants' action as it could have influenced the election.

Pursuant to *Pickering* "[a] government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." *Johnson v. Ganim,* 342 F.3d 105, 114 (2d Cir. 2003). Thus, "defendants may . . . escape liability

---

[7] Plaintiff asserts that given the picture was of him and his infant son, the use of the word "we" was an obvious reference to the two of them. This argument is underwhelming given the inability of his infant son to vote.

if they can demonstrate that . . . the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds* by *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008).

In applying this balancing test, courts may consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (internal citations omitted). Further, "[t]he 'manner, time, and place' in which the speech occurs is important in determining whether it is protected." *Lewis v. Cowen*, 165 F.3d 154, 162 (2d Cir.1999). "For example, the *Pickering* balance is more likely to favor the government when an employee directly confronts his supervisor with objectionable language than when an employee engages in equivalent speech on his own time and not in front of co-workers." *Id*. "The weight afforded each side of the *Pickering* balance also varies with the content of the speech. The more the employee's speech touches on matters of significant public concern, the greater the level of disruption to the government that must be shown." *Id.* The analysis under *Pickering* is a "fact-sensitive inquiry." *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 298 (E.D.N.Y. 2009). Furthermore, "the government has the burden of showing that despite First Amendment rights the employee's speech so threatens the government's effective operation that discipline of the employee is justified." *Melzer v. Bd. of Educ.*, 336 F.3d 185, 193 (2d Cir. 2003). In this regard the Second Circuit has held that a fire department has a strong interest in maintaining efficiency and preventing disruption. "When lives may be at stake in a fire, an Esprit de corps is essential to the

success of the joint endeavor. Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty [and] harmony among coworkers." *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 26. (2d Cir. 1979). The *Pickering* test presents a question of law for the Courts to resolve. *See Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001). Even if the government prevails on the *Pickering* test, plaintiff may still succeed by showing that the adverse action was in fact motivated by retaliation and not by any fear of a resultant disruption. *See Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006).

As stated above, the *Pickering* test is a "fact-sensitive inquiry" and the Defendants bear the burden of satisfying that test. As such, a motion to dismiss is not the appropriate means to determine the balance of interests in this case. *See Sugar v. Greenburgh Eleven Union Free Sc. Dist.*, 2018 WL 6830865, *7 (S.D.N.Y. Dec. 28, 2018).

The motion to dismiss the First Amendment retaliation claim based on *Pickering* is denied.

Nor does qualified immunity provide a basis for dismissal at this time given the plausible claim that Defendants were motivated by retaliation. "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995). Government actors are entitled to qualified immunity on a § 1983 claim if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Further, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his

actions were lawful at the time of the challenged act." *Lennon*, 66 F.3d at 420 (quoting *Anderson,* 483 U.S. at 641); *see also Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996) ("[P]ublic officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon*, 66 F.3d at 420 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Given the plausible allegations of a retaliatory motive, dismissal on the basis of qualified immunity at this juncture is not appropriate.

The motion to dismiss the Plaintiff's First Amendment retaliation claim, i.e. the second cause of action, is denied.

**B.     The Free Speech Claims**

In support of dismissal, Defendant maintains that assuming the directive to remove the Facebook post was a content-based restriction, it satisfies strict scrutiny. "[T]he directive to remove the Facebook Post was necessary to achieve a compelling interest: prevent the public from being spoon-fed a false political message on Election Day" and "to avoid public dissemination of misinformation" (Defs.' Mem. at 16.)  Plaintiff responds that (1)there is no compelling interest in selectively  suppressing speech that opposes a certain position while permitting speech that favors the opposite position; (2) if the Department "truly feared the public believing that as a whole, the Fire Department supported any particular candidate, they would not have created the impression that the Fire Department supported Siry;" and (3) his Facebook

post could not reasonably have created the impression that the Department as a whole supported Lalota. (Pl.'s Opp. Mem. as 20-21.)

Strict scrutiny is invoked in First Amendment cases where a law "applies to particular speech because of the topic discussed or the idea or message expressed" or "though facially content neutral . . . cannot be justified without reference to the content of the regulated speech," including preventing expression from disfavored speakers. *Citizens United v. Schneiderman*, 882 F.3d 374, 381-82 (2d Cir. 2018) (quoting *Reed v. Town of Gilbert, Arizona*, —— U.S. ——, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015).

Here, Plaintiff's Facebook posting could reasonably give the impression that the Amityville Fire Department as a whole supported the candidacy of Lalota for mayor. Plaintiff may not have intended that impression and it is not the only reasonable one to be drawn. Nonetheless  such an impression may reasonable be drawn and the appearance of the Department's support for one particular candidate may justifiably be viewed as potentially affecting the  "hotly contested" election.  *Cf. Jefferies v. Harleston*, 52 F.3d 9, 12 (2d Cir. 1995) (government need not show actual disruption, potential interference with governmental operations suffices).

Here, there is nothing to indicate that anyone else in the Fire Department posted their support of a political candidate under a picture in which they were dressed in Fire Department gear captioned "We are voting for . . . ." In other words, Plaintiff has not identified any similarly situated firefighters that were treated differently from him. Thus, there is no plausible claim of viewpoint discrimination. Additionally, the allegation that department members wore their uniforms to and parked their department vehicles at fund raising events do not give rise to the impression that the department as a whole supported a particular candidate. There is no

allegation that there was some sort of signage at the venue where the fundraisers were held that would alert passersby to the reason the department vehicles were there. Attending a fund raiser or victory party in department gear or posting a message on a closed chat group is not the same as a posting on the internet purporting to throw the support of the entire department behind a particular candidate as the former simply do not have the same potential to persuade.

As alleged in the complaint, Plaintiff engaged in various other political activities vis a vis the mayoral election – such as posting sign on his lawn, speaking to village residents and making other social media posts – undisturbed by Defendants. It was only when the posting at issue was made that the Defendants curbed Plaintiff's speech, limited to that post. Under the circumstances presented, no free speech claim has been stated.

The motion to dismiss the first and third causes of action is granted.

## V.      The Defamation Claim

Next to be discussed is Plaintiff's tenth cause action asserting a defamation claim.[8] The complaint alleges that "Defendants falsely claimed that Squicciarini failed to comply with the Fire Department's social media policy" and that "Defendants" disseminated this information orally at Siry's victory party, in an "email Roger Smith sent to numerous individuals," and in the minutes of the March 21, 2017 Fire Council meeting. (Compl. ¶¶ 187-89.)

A defamatory statement is one that exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society. " *Karedes v. Ackerley Grp., Inc.*, 423 F.3d

---

[8] Plaintiff's fourth cause of action asserts that a *Monell* claim against the Village, the viability of which is unaddressed by the parties on the instant motion. Claims six through ten, asserted under state law, have been withdrawn by Plaintiff.

107, 112 (2d Cir. 2005) (internal quotation marks omitted) "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.' " *Thai v. Cayre Grp., Ltd.,* 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (citing Gargiulo v. Forster & Garbus, Esqs., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009).

Turning first to the dissemination of the minutes, the place to begin is with what the March 21, 2017 minutes state: "After a discussion Ex-Captain Jack Squicciarini was relieved of duty for not complying with the social Media policy. (Suspension was rescinded on Saturday March 25, 2017)." (Ex. D to Weisbord Declar.) Based on the allegation in the Complaint, the minutes accurately reflect what happened and therefore the requirement of a false statement is not met. Thus that portion of the defamation claim is dismissed.

Next, with respect to oral statements, to plausibly state a claim against each of the individual defendant, Plaintiff is required to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Ello v. Singh*, 531 F. Supp. 2d 552, 580 (S.D.N.Y 2007). Without this information, the Court cannot discern, among other thing, whether the statement is defamatory, i.e. "tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace." *Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014). Also, regarding the email sent by "Roger Smith," the complaint does not identify who this individual is (he is not a named defendant)[9], what the email said, or facts as to why each and every individual defendant is responsible for Mr. Smith's email. Thus, the motion to dismiss the eleventh cause of action is

---

[9] The complaint does name a Ronald Smith.

granted. However, Plaintiff is given leave to file an amended complaint within 30 days of the date hereof to address these deficiencies.[10]

<strong>CONCLUSION</strong>

For the reasons set forth above, Defendants' motion is granted to the extent that first, third, fifth and eleventh causes of action are dismissed, but otherwise denied.  Plaintiff is granted leave to file an amended complaint, within thirty days of the date hereof, with respect to the eleventh cause of action insofar as it is based on alleged oral statements and the Smith email.

**SO ORDERED.**

Dated: Central Islip, New York
      March 15, 2019

        s/ Denis R. Hurley
       Denis R. Hurley
       United States District Judge

---

[10] To the extent that no amended complaint is filed,  the twelfth cause of action, which seeks to hold the village liable for defamation on *respondeat superior* grounds, will  also be dismissed.